# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| KENDRICK SCOTT,<br><br>        **Plaintiff,**<br><br>  -against-<br><br>**DETROIT POLICE DEPARTMENT ("DPD") SERGEANT WAYNE PRITCHETT; DPD OFFICER CATHERINE ADAMS; DPD OF-FICER BARBARA SIMON; and DPD OFFICER ANTHONY JACKSON,**<br><br>        **Defendants.** | **No. 19-12718**<br><br>**Paul D. Borman**<br><u>**United States District Judge**</u><br><br>**Elizabeth A. Stafford**<br><u>**Magistrate Judge**</u> |
| **JUSTLY JOHNSON, individually;**<br><br>        **Plaintiff,**<br><br>  -against-<br><br>**CATHERINE ADAMS, in her indi-vidual capacity; and BARBARA SI-MON, in her individual capacity;**<br><br>        **Defendants.** | **No. 19-12331**<br><br>**Paul D. Borman**<br><u>**United States District Judge**</u><br><br>**Elizabeth A. Stafford**<br><u>**Magistrate Judge**</u> |

**ZOE SALZMAN**
**ASHOK CHANDRAN**
Attorneys for plaintiff Scott
600 Fifth Avenue, 10th Floor
New York, NY 10020
(212) 763-5000
zsalzman@ecbalaw.com

**MICHAEL M. MULLER (P-38070)**
**PATRICK M. CUNNINGHAM (P67643)**
Attorneys for defendants
2 Woodward Avenue, Suite 500
Detroit, MI 48226
(313) 237-5052
mullm@detroitmi.gov

**WILLIAM GOODMAN (P14173)**
Co-Counsel for plaintiff Scott
1394 E. Jefferson Avenue
Detroit, MI 48207
(313) 567-6170
bgoodman@goodmanhurwitz.com

**WOLFGANG MUELLER (P-43728)**
Attorney for plaintiff Johnson
41850 W. 11 Mile Road, Suite 101
Novi, MI 48375
(248) 489-9653
wolf@wolfmuellerlaw.com

## MOTION FOR PARTIAL SUMMARY JUDGMENT
## ON BEHALF OF DEFENDANTS

NOW COME defendants, and for their Motion for Partial Summary Judgment, state as follows:

1. The instant wrongful conviction cases arise out of the robbery-murder of Lisa Kindred at about 12:45 a.m. in the early morning hours of May 9, 1999.  (Exhibit A).

2. That two witnesses, Antonio Burnett and Raymond Jackson implicated plaintiffs, Justly Johnson and Kendrick Scott by and though testifying that Johnson and Scott were amidst an armed robbery of Lisa Kindred, and ended up shooting and killing her.  (Exhibit B).

3. That plaintiffs, Justly Johnson and Kendrick Scott were convicted of

the murder of Lisa Kindred, sentenced to life in prison without parole, served approximately twenty (20) years in prison, were granted a new trial and the charges were dismissed by the Wayne County Prosecutor's office. (Exhibit A).

4. That plaintiffs have asserted identical claims against the defendants in both lawsuits for malicious prosecution in violation of the 4th Amendment under 42 U.S.C. §1983, and the same is subject to dismissal due to the existence of probable cause. (as more fully set forth in the brief attached hereto).

5. That plaintiffs have asserted identical claims against defendants in both lawsuits under *Brady v. Maryland* for allegedly suppressing material exculpatory evidence from witness Jody Gonterman, and the same is subject to dismissal because the alleged exculpatory evidence is neither exculpatory nor material/admissible. (as more fully set forth in the brief attached hereto).

6. That the doctrine of qualified immunity bars both plaintiffs' malicious prosecution claims against officer Anthony Jackson, both plaintiff's claims of Brady violations regarding Jody Gonterman against both defendants in the Johnson case and all defendants except officer Anthony Jackson in the Scott case. In addition, qualified immunity bars the failure to intervene claim against officer Anthony Jackson. (as more fully set forth in the brief attached hereto).

7. That there is no genuine issue of material fact regarding any of the above claims, and as such, defendants are entitled to judgment as a matter of law. (as more

fully set forth in the brief attached hereto).

WHEREFORE, defendants request this honorable court enter an order partially dismissing plaintiff's claims against them with prejudice.

Respectfully submitted,


/s/Michael M. Muller
**MICHAEL M. MULLER (P-38070)**
**Senior Assistant Corp Counsel**
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
Dated:  March 15, 2021               (313 237-5052

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KENDRICK SCOTT,

        Plaintiff,

  -against-

DETROIT POLICE DEPARTMENT ("DPD") SERGEANT WAYNE PRITCHETT; DPD OFFICER CATHERINE ADAMS; DPD OF-FICER BARBARA SIMON; and DPD OFFICER ANTHONY JACKSON,

        Defendants.

No. 19-12718

Paul D. Borman
<u>United States District Judge</u>

Elizabeth A. Stafford
<u>Magistrate Judge</u>

JUSTLY JOHNSON, individually;

        Plaintiff,

  -against-

CATHERINE ADAMS, in her indi-vidual capacity; and BARBARA SI-MON, in her individual capacity;

        Defendants.

No. 19-12331

Paul D. Borman
<u>United States District Judge</u>

Elizabeth A. Stafford
<u>Magistrate Judge</u>

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

**Oral Argument Requested**

## **STATEMENT OF ISSUES**

1.  Are defendants entitled to summary judgment regarding plaintiffs' Federal Civil Rights claim for malicious prosecution where it is undisputed that witnesses established probable cause?

Defendants say: "Yes"

2. Are defendants entitled to summary judgment on plaintiffs' Federal Civil Rights claim for violation of Brady regarding a statement made by Jody Gonterman where the alleged suppressed evidence is neither exculpatory nor material/admissible?

Defendants say: "Yes"

3.  Does the doctrine of qualified immunity bar plaintiff Scott's malicious prosecution claims against officer Anthony Jackson, both plaintiff's claims of Brady violations regarding Jody Gonterman against both defendants in the Johnson case and all defendants except officer Anthony Jackson in the Scott case, and plaintiff Scott's failure to intervene claim against officer Anthony Jackson?

Defendants say: "Yes"

i

## <u>CONTROLLING AUTHORITIES</u>

*Ahlers v. Schebil*, 188 F.3d 365 (6th Cir. 1999)

*Anderson v. Liberty Lobby*, 477 U.S. 242; 91 L.Ed.2d 202; 106 S.Ct. 2505 (1986)

*Baker v. McCollan*, 443 U.S. 137; 99 S.Ct. 2689; 61 L.Ed2d. 433 (1979)

*Brady v. Maryland*, 373 U.S. 83; 83 S.Ct. 1194; 10 L.Ed.2d 215 (1963)

*Brown v. Battle Creek Police Department*, 844 F.3d 556 (6th Cir. 2016)

*Bruton v. United States,* 391 U.S. 123; 88 S.Ct. 1620; 20 L.Ed.2d 476 (1968)

*Celotex Corp. v. Catrett*, 477 U.S. 317; 106 S.Ct. 2548; 91 L.Ed.2d 265 (1986)

*Cone v. Bell*, 556 U.S. 449; 129 S.Ct. 1769; 173 L.Ed.2d 701 (2009)

*Criss v. City of Kent*, 867 F.2d 259 (6th Cir. 1988)

*Crockett v. Cumberland Coll.,* 316 F.3d 571 (6th Cir. 2003)

*Donta v. Hooper*, 774 F2d. 716 (6th Cir. 1985)

*Dutton v. Evans*, 400 U.S. 74; 91 S.Ct. 210; 27 L.Ed.2d 213 (1970)

*Franks v. Delaware*, 438 U.S. 154; 98 S.Ct. 2674; 57 L.Ed.2d 667 (1978)

*Giglio v. United States*, 405 U.S. 150; 92 S.Ct. 763; 31 L.Ed.2d 104 (1972)

*Gumm v. Mitchell*, 775 F.3d 345 (6th Cir. 2014)

*Heck v. Humphrey,* 512 U.S. 477; 114 S.Ct. 2364; 129 L.Ed.2d 383 (1994)

*Hill v. McIntyre*, 884 F.2d 271 (6th Cir. 1989)

*Lee v. Illinois,* 476 U.S. 530; 106 S.Ct. 2056; 90 L.Ed.2d 514 (1986)

*Malley v. Briggs*, 475 U.S. 335; 106 S.Ct. 1092; 89 L.Ed2d 271 (1986)

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574; 106 S.Ct. 1348; 89 L.Ed2d 538 (1986)

*Messerchmidt v. Millender*, 565 U.S. 535; 132 S. Ct. 1235, 1244; 182 L.Ed.2d 47 (2012)

*Moldowan v. City of Warren*, 570 F.3d 698 (6th Cir. 2009)

*Mullins v. Cyranek*, 805 F.3d 760 (6th Cir. 2015)

*Robinson v. Mills*, 592 F.3d 730 (6th Cir. 2010)

*Stanton v. Sims*, 571 U.S. 3; 134 S. Ct. 3, 5; 187 L.Ed.2d 341 (2013)

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010)

*United States v. Goodwin*, 449 F.3d 766 (7th Cir. 2006)

*United States v. Ogden*, 685 F.3d 600 (6th Cir. 2012)

*Volticky v. Village of Timberlake*, 412 F.3d 669 (6th Cir. 2005)

*Williamson v. United States,* 512 U.S. 594; 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994)

*Wogenstahl v. Mitchell*, 668 F. 3d 307 (6th Cir. 2012)

*Wood v. Bartholomew*, 516 U.S. 1, 6; 116 S.Ct. 7; 133 L Ed2d 1 (1995)

_____

42 U.S.C. §1983

Fed. R. Civ. P. 56

FRE 804(b)(3)

## STATEMENT OF FACTS

The instant wrongful conviction cases arise out of the robbery-murder of Lisa Kindred at about 12:45 a.m. in the early morning hours of May 9, 1999.  (Exhibit A-Complaint of Justly Johnson and Exhibit C - witness statements of Will Kindred and Verlin Miller).  Specifically, Will and Lisa Kindred, together with their three children, went to a drive-in movie in Dearborn the evening of Saturday, May 8, 1999. (Exhibits A & C).  After the movie, they drove over to the east side of Detroit to visit with Will Kindred's sister (Lillie Harris) and her boyfriend (Vernon Miller).  (Exhibits A & C).  Will wanted to discuss purchasing a motorcycle from Mr. Miller. (Exhibits A & C).  When they arrived, Will went into Harris and Miller's home to speak with Mr. Miller, and Lisa and three children remained outside in their minivan.  (Exhibits A & C).

After a while, Lisa Kindred got out of the van, walked up to the front door of the house, knocked, and informed her husband she and the kids wanted to leave or come into the house.  (Exhibits A & C).  Will said he would be right out, and a few minutes later heard a slamming sound.  (Exhibits A & C).  He and Mr. Miller opened the door and immediately saw the mini-van screetching away and an individual running across a vacant lot adjacent to where the van had been parked.  (Exhibits A & C).  Will Kindred gave chase to this fleeing person, and Mr. Miller got in his pick-up truck, drove around the area looking for the individual who ran, and then drove

to the gas station on the corner of Bewick and E. Warren.  (Exhibit C).  The mini-van was at the gas station, and Lisa Kindred was lying dead several feet from the van.  (Exhibit C).  She was determined to have been shot once through the driver's side window with a 22 caliber long rifle.

At somewhere between 11:00 pm on May 8, 1999 and 12:00 am on May 9, 1999, plaintiff, Kendrick Scott walked from his home on Hurlbut to his girlfriend, Falyn Kenner's house on Bewick (one block east of Hurlbut) just before the shooting to obtain a cell phone.  (Exhibit D - dep of K. Scott - pp. 34-5).  Kendrick became frightened by two persons, one of whom was carrying a rifle, walking in the alley near his girlfriend's home.  (Exhibit D, pp. 36-38).  Ms. Kenner let Mr. Scott into her home, and the two individuals with the rifle walked by the home on Bewick toward the sight of the shoot.  (Exhibit D, pp. 40-1).  Unbeknownst to DPD, Mr. Scott left his girlfriend's home and went to his nephew, Quentin Billingslea's home on the street immediately west of Bewick (Hurlbut).  ((Exhibit D, p.43).  At no time did Mr. Scott ever inform DPD or the Wayne County prosecutor of this.

Again, unknown to the DPD, Mr. Scott testified at his recent deposition that he entered his nephew, Quentin Billingslea's home, and told his nephew and his nephew's girlfriend (Lakeniya Hicks), that he had just seen two persons carrying a rifle. (Exhibit D, p.44 & Exhibit E - dep of L. Hicks, p.8).  As testified to by Mr. Scott and Ms. Hicks, a single shot rang out and a car screetched off.  (Exhibit D, p.

44 & Exhibit E, p. 9-10).  Mr. Scott and Mr. Billingslea got in a car and drove down Bewick to see what occurred.  (Exhibit D, p. 45 & Exhibit E, p. 11).  Apparently, they stopped and spoke with Will Kindred's sister, Lillie Harris who was pacing in front of the home Will Kindred had been visiting because Lisa Kindred had just sped off in the mini-van.  (Exhibit D, p.46).  According to Mr. Scott, he and Billingslea then drove around the block and Scott was dropped off at his home on Hurlbut.  (Exhibit D, p. 50).

Again, it is extremely important to note that above facts were known only to Mr. Scott, Mr. Billingslea and Ms. Hicks and never shared with DPD or the Wayne County prosecutor's office.  That is right….an airtight alibi placing the three of them together at the time of the fatal shot to Lisa Kindred.  Just why this alibi defense and the aforesaid witnesses were never called at either plaintiff's trial remains a mystery.

In any event, once dropped off at home, Mr. Scott telephoned his girlfriend, Ms. Kenner, went back to her home on Bewick and spoke with her on her front porch, and then went four homes down the block and spoke with one Raymond Jackson.  (Exhibit D, pp. 51, 54).  The two men then walked down to the gas station were the victim, Lisa Kindred had driven the mini-van, to see what was going on.  (Exhibit D, pp. 56-7).  The two men then walked directly back to Mr. Scott's home.  (Exhibit D, p. 57).  According to Mr. Scott, plaintiff, Justly Johnson and Antonio Bernette arrived at his home shortly thereafter.  (Exhibit D, p. 59).

3

Plaintiff, Justly Johnson testified that he and Antonio Bernette were together for most of the evening.  (Exhibit F - dep transcript of Justly Johnson, pp. 26-29).  At about 12:00 am on May 9, 1999, they began riding in Mr. Bernette's friend, Mike's car going to various night-clubs.  (Exhibit F, p. 30).  Around 1:15 am, Mike dropped Mr. Johnson and Mr. Bernette off near the gas station where Lisa Kindred had driven the mini-van.  (Exhibit F, p. 32-33).  The two men approached the station, but were told by police to get back, so they ended up walking to Mr. Scott's home on Hurlbut.  (Exhibit F, p. 33).  When they got to Mr. Scott's house, they told Scott that something occurring at the gas station, and Scott said it happened on Bewick and ended up at the gas station.  (Exhibit F, p. 34).  In any event, Mr. Johnson called his girlfriend to take him home, Mr. Burnette crawled into Mr. Scotts car and went to sleep, and Mr. Scott and Mr. Jackson went back to Mr. Jackson's house.  (Exhibit D, p. 61 & Exhibit F. p. 34).

By now, there were several police scout cars which had responded to the scene and were canvassing the neighborhood.  A DPD scout car encountered Scott and Jackson, asked if they saw anything, Scott indicated he had seen, and the two men were taken to Homicide Headquarters for questioning.  (Exhibit F, P. 63-4).  At 6:55 am, Mr. Scott gave a written statement to homicide detective Kirk, but did not tell him that he was with his nephew and his nephew's girlfriend at the time the fatal shot rang out.  (Exhibit G).  In fact, in his statement he indicated that he was waiting on

a ride at his girlfriend's house and when the ride showed up and he went outside, he found out that a neighbor's relative had been kidnapped. (Exhibit G). Raymond Jackson gave a statement at about 5:00 a.m. indicating that he was sleeping, heard a shot and car screetch, put on his clothes and went outside. (Exhibit B). Mr. Jackson said he saw Mr. Scott at his girlfriend, Falynn Kenner's house, and Scott told him that he had observed two men with a rifle before the shooting. (Exhibit B). Mr. Jackson was allowed to go home after giving his statement.

At about 11:30 am on May 9, 1999, DPD found Antonio Burnette sleeping in the vehicle parked in front of Mr. Scott's home. (Exhibit H). Mr. Burnette told the police he had been at a club drinking all night with Mr. Scott, and accordingly, was taken to Homicide for questioning. (Exhibit H). At 2:20 pm on May 9, 1999, Mr. Burnette gave a statement to homicide indicating that in the early evening of May 8, 1999, Mr. Scott and Mr. Johnson had told him that they intended to "hit a lick" (commit a robbery). (Exhibit B). Mr. Burnette told homicide that he left with his father at about 10:30 p.m., and returned to Mr. Scott's house at about 2:30 a.m. on May 9, 1999. (Exhibit B). Mr. Burnette told homicide that upon returning to Mr. Scott's home, Mr. Scott said he had to shoot a woman amidst a robbery, and Mr. Johnson, who was also present, confirmed the same. (Exhibit B).

Just after Mr. Burnette was taken to homicide, plaintiff, Justly Johnson walked into Raymond Jackson's home, said "happy mother's day" to Raymond Jackson's

5

grandmother, and sat down with Raymond. (Exhibit B). Mr. Johnson told Raymond Jackson that he and Mr. Scott were "hitting a lick" last night and shot the victim. (Exhibit B). About a half hour thereafter, the police brought Raymond Jackson and plaintiff, Justly Johnson down to homicide for questioning, and Mr. Jackson confirmed what he had been told by Mr. Johnson in a second statement given on May 9, 1999 at 2:20 p.m. (Exhibit B).

In a nutshell, two friends of both plaintiffs, Antonio Burnette and Raymond Jackson gave independent statements without speaking to each other, that plaintiffs had told them while amidst a robbing a woman, they shot her.

In January of 2000, Justly Johnson was tried before Judge Prentis Edwards sitting as the fact finder. Judge Edwards was bar admitted in 1966, worked as a prosecuting attorney in Wayne County, a Juvenile referee, 36th District Court Judge, Recorders Court Judge, and Wayne County Circuit Judge through his retirement in 2012. In a word, Judge Edwards was highly respected and extremely experienced. Judge Edwards found Mr. Johnson guilty of the murder of Lisa Kindred predicated on Mr. Burnette and Mr. Jackson's testimony. (Exhibit I, January 12, 2000 proceedings, pp. 21-31). In June of 2000, a jury found Mr. Scott guilty of the murder of Lisa Kindred predicated on the same evidence. (Exhibit J, June 1, 2000 proceedings, pp. 74-78).

After about 20 years in prison, the plaintiffs were granted a new trial. The cases were dismissed by the Wayne County prosecutor's office because Mr. Burnette had recanted, and Mr. Jackson had died. Accordingly, there was insufficient evidence to retry the cases.

In 2019, Mr. Scott and Mr. Johnson filed lawsuits asserting that defendant DPD officers were liable to them for violating their civil rights. Specifically, they assert that defendants manufactured probable cause by and through coercing career criminal, Antonio Bernette's testimony though physical abuse and threats, and coercing Raymond Jackson's testimony through threats. In addition, it is alleged that defendants withheld exculpatory evidence given via statement by victims sister, Jody Gonterman. Mr. Scott also alleges that defendants had a duty to intervene and otherwise stop each other from committing misconduct.

It is defendants contention that there was probable cause for the arrest and prosecution, and as such, plaintiff's claim for malicious prosecution is subject to dismissal. In addition, the claimed *Brady* violation is subject to dismissal because it is neither exculpatory nor material/admissible. Finally, all defendants are entitle to qualified immunity on the Brady claim relating to Ms. Gonterman because only officer Anthony Jackson took the statement from Ms. Gonterman and allegedly otherwise knew he did not write down the alleged exculpatory statement. Further, officer

Jackson was undisputedly did not partake in anything other than taking Ms. Gonterman's statement, was on a totally different homicide squad and is therefore entitled to qualified immunity as to Mr. Scott's duty to intervene claim.

## <u>STANDARD OF REVIEW</u>

This motion is brought pursuant to Fed. R. Civ. P. 56(c). With reference to that rule, it is significant that the issue raised in the motion goes to the plaintiff's case in chief rather than an affirmative defense and that the plaintiff accordingly bears the burden of proof on that issue. In *Celotex Corporation v. Catrett*, 477 U.S. 317, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986) the Supreme Court noted that:

> ... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party, who **fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at the trial.** In such a case there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.' [T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...' [cite omitted] 91 L.Ed.2d at 273 - 274 (Emphasis added).

Once the movant in a Rule 56(c) motion identifies the issue as to which it maintains there is no genuine issue of material fact, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The *Celotex* holding was followed and developed in *Anderson v. Liberty Lobby*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986), which was decided the same day as *Celotex*. In *Anderson* the Court emphasized that not just any issue of fact is sufficient to avoid summary judgment. Rather, the issue must be both material and genuine. A fact issue is material only if "it might affect the outcome of the suit under the governing law." 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. A fact issue is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

## LAW AND ARGUMENT

## PLAINTIFFS' CLAIM OF MALICIOUS PROSECUTION IS SUBJECT TO DISMISSAL

The Sixth Circuit recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment which encompasses wrongful investigation, prosecution, conviction and incarceration.  *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010).  To succeed on a malicious prosecution claim under 42 U.S.C. §1983 when the claim is premised on violation of the Fourth Amendment, a plaintiff must prove the following: (1) criminal prosecution was initiated against plaintiff, and defendants made, influenced, or participated in the decision to prosecute; (2) lack of probable cause for the criminal prosecution; (3) as a result of the

9

legal proceeding plaintiff suffered a deprivation of liberty apart from the initial sei-zure, and; (4) the criminal proceeding terminated in plaintiff's favor.  *Id* at 308-309.

A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff.  *Volticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005).  An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest made pursuant to 42 U.S.C. § 1983.  *Id*.; *Baker v. McCollan*, 443 U.S. 137, 143-44; 99 S.Ct. 2689; 61 L.Ed2d. 433 (1979).  However, a police officer cannot rely on a facially valid warrant if he or she made intentional or reckless misrepre-sentations or omitted information which but for the misrepresentations or omissions, probable cause would not have been found.  *Volticky*, *supra* at 677, n.4; *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999); *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).  That is, a constitutional violation can only be found if in setting aside the misrepresentations, the remaining facts no longer support probable cause. *Franks v. Delaware*, 438 U.S. 154; 98 S.Ct. 2674; 57 L.Ed.2d 667 (1978); *Hill, su-pra*.

Probable cause exists if the facts and circumstances within the arresting of-ficer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing that the suspect has committed, is committing or is about to commit a crime.  *Crockett v. Cumberland Coll*., 316 F.3d 571, 580 (6th Cir. 2003).

A law enforcement officer is entitled to rely on an eyewitness to establish adequate probable cause with which to sustain an arrest. *Ahlers, supra* at 370. This comports with the general notion that since eyewitness statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity. *Id.*

Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused. *Ahlers, supra* at 371; *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). As aptly put by the *Criss* court, law enforcement "is under no obligation to give credence to a suspect's story [or alibi] nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Ahlers, supra* at 371 quoting *Criss, supra* at 263.

In the case at bar, the Officer in Charge (Sgt. Catherine Adams) submitted an Investigator's Report setting forth a summary of the evidence presented together with the actual homicide file which includes the witness statements. (Exhibit B). Probable cause is created by the statements of Antonio Bernette and Raymond Jackson. These two witnesses also testified at the Preliminary Examination wherein 36th District Court Judge Claudia Gartin found probable cause an bound over the case for trial. (Exhibit K, proceedings of June 4, 1999, pp. 68-9).

11

Mr. Bernette has since recanted his testimony, and has testified that his testimony to the effect that Mr. Scott and Mr. Johnson told him they shot Lisa Kindred amidst robbing her was given because defendants physically beat and threatened him. While Mr. Bernette is less than credible, for the purposes of this motion he must be believed. As such, his statement has to be removed from the investigator's report, and the query then becomes whether Raymond Jackson's testimony is sufficient to create probable cause. The problem is that Mr. Jackson passed away in August of 2008, and accordingly, all that is left is his signed statements given to DPD, his Preliminary Examination testimony, and testimony at the trials of plaintiffs. (Exhibit L, dep of Lameda Thomas, p. 10).

In this regard, plaintiffs have not coincidentally produced two witnesses, Lakeniya Hicks and Lameda Thomas, who say that after the trials, Mr. Jackson indicated that he perjured himself because the prosecutors and police were pressuring him. Despite being an alibi witness who never testified at trial to help Mr. Scott, Ms. Hicks testified at her recent deposition that Mr. Scott is like family to her. (Exhibit E, dep of Lakeniya Hicks, p. 25). She indicated that just before or during trial, she overheard Mr. Jackson tell her boyfriend, Quinton Billingslea that he lied in his statement because he was scared the prosecutor would put him in jail and that the police kind of forced him to make the statement. (Exhibit E, pp. 15-16).

Ms. Thomas gave a deposition and indicated that Raymond Jackson was her

cousin, and her family was close with Raymond. (Exhibit L, p. 9). She spoke with Mr. Jackson twice about his testimony at the trial of plaintiffs. (Exhibit L. p. 11). Ms. Thomas indicated that at a family gathering in 2002 at her mother's home, Mr. Jackson told her that he lied at trial because the police pressured him saying that he or his grandmother would go to jail. (Exhibit L, p. 11). Again, at a birthday party in 2006 at her aunt's home, Mr. Jackson told her he lied a trial because he was scared. (Exhibit L, pp. 13-4). It is plaintiff's belief that this blatant hearsay is admissible as an admission against penal interest under FRE 804(b)(3). However, such is not the case.

FRE 804(b)(3) was dealt with extensively by the United States Supreme Court in *Williamson v. United States,* 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). In *Williamson,* the court began by saying that:

> the most faithful reading of Rule 804(b)(3)
> is that it does not allow admission of nonself-
> inculpatory statements, even if they are
> made within a broader narrative that
> is generally self-inculpatory. The district court
> may not just assume for purposes of Rule
> 804(b)(3) that a statement is self-inculpatory
> because it is part of a fuller confession, and this
> is especially true when the statement implicates
> someone else. "[T]he arrest statements of a
> codefendant have traditionally been viewed
> with special suspicion. Due to his strong
> motivation to implicate the defendant and to
> exonerate himself, a codefendant's statements
> about what the defendant said or did are
> less credible than ordinary hearsay evidence."

13

> *Lee v. Illinois,* 476 U.S. 530, 541, 106 S.Ct.
> 2056, 2062, 90 L.Ed.2d 514 (1986) (internal
> quotation marks omitted); see also *Bruton v.
> United States,* 391 U.S. 123, 136, 88 S.Ct.
> 1620, 1628, 20 L.Ed.2d 476 (1968); *Dutton
> v. Evans,* 400 U.S. 74, 98, 91 S.Ct. 210, 224
> (1970) (Harlan, J., concurring in result). 512
> U.S. at 600-601.

Another words, Mr. Jackson's self-inculpatory comments that he lied at trial may be admissible FRE 804(b)(3), but his self-exculpatory statements immediately thereafter that the "police pressure me, threatened me etc…" are inadmissible hearsay.

Of course, coercion/duress is a defense to perjury, and as such, his self-exculpatory statements do not expose him to criminal liability.  Further, as was of primary concern to the *Williamson* court, the mere proximity of collateral self-exculpatory statements does not justify admissibility.  In fact, the court rightly pointed out that one of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature.  *Id.* at 599-600.

In the instant case, Raymond Jackson's self-exculpatory statements the "police pressured or threatened me" made to Ms. Hicks and Ms. Thomas are blatantly inadmissible hearsay, and cannot be used to create a fact question defeating summary judgment.  What exists is Raymond Jackson's statements (Exhibit B) indicating that plaintiff, Justly Johnson told him that he and Mr. Scott were hitting a lick and had to shoot the woman.  This is

sufficient to create probable cause without the statement of Antonio Bernette, and accordingly, the plaintiffs' claim for malicious prosecution is subject to dismissal.

## PLAINTIFFS' BRADY CLAIM REGARDING JODY GONTERMAN IS SUBJECT TO DISMISSAL

To establish a violation of constitutional rights (Due Process) under *Brady v. Maryland*, 373 U.S. 83; 83 S.Ct. 1194; 10 L.Ed.2d 215 (1963), plaintiff must prove that in his or her criminal proceeding, defendant withheld exculpatory or impeachment evidence; the state suppressed that evidence; and the suppression resulted in prejudice, meaning that the suppressed evidence was material. *Robinson v. Mills*, 592 F.3d 730, 735 (6th Cir. 2010). Material evidence is that which creates a reasonable probability that had the evidence been disclosed to the defense, the result of the trial would have been different. *Cone v. Bell*, 556 U.S. 449, 470; 129 S.Ct. 1769; 173 L.Ed.2d 701 (2009). Disclosure to the defense in a criminal proceeding is ultimately the responsibility of the prosecutor. *Giglio v. United States*, 405 U.S. 150, 154; 92 S.Ct. 763; 31 L.Ed.2d 104 (1972). However, the police have an analogous and derivative obligation to disclose such evidence to the prosecutor. *Moldowan v. City of Warren*, 570 F.3d 698 (6th Cir. 2009).

If a conviction is vacated due to a *Brady* violation, the criminal defendant can bring a §1983 action. *Heck v. Humphrey,* 512 U.S. 477, 486-87; 114 S.Ct. 2364; 129 L.Ed.2d 383 (1994). Police officers can be held liable for withholding

material exculpatory or impeachment evidence from the prosecutor, thus causing the prosecutor to violate the criminal defendant's *Brady* rights.  *Moldowan, supra.*

Withheld information is material under *Brady* only if it would have been admissible at trial or would have lead directly to admissible evidence.  *United States v. Ogden*, 685 F.3d 600, 605 (6th Cir. 2012).  Inadmissible information is not evidence at all for the purposes of *Brady* and thus, can have no direct effect on the outcome at trial.  *Wogenstahl v. Mitchell*, 668 F. 3d 307, 325, n. 3 (6th Cir. 2012) quoting *Wood v. Bartholomew*, 516 U.S. 1, 6; 116 S.Ct. 7; 133 L Ed2d 1 (1995).  In *Wood v. Bartholomew*, the Supreme Court held that no Brady violation occurred when prosecutors withheld from defense counsel a witness's failed polygraph, which was inadmissible under state law.  The Court found that the prosecution was not obligated to disclose the inadmissible evidence because the evidence was not "material".  See also*, Gumm v. Mitchell*, 775 F.3d 345 (6th Cir. 2014).

In the case at bar, plaintiffs maintain that defendant officer Anthony Jackson failed to write down an exculpatory evidence in a statement taken from the victims Lisa Kindred's sister, Jody Gonterman.  Ms. Gonterman came to the homicide department on May 10, 1999, and gave a statement.  (Exhibit M).  Ms. Gonterman testified at deposition that she is certain she told officer Jackson that her sister Lisa told her in a 1998 telephone conversation that if she was murdered, to look to her husband, Will.  (Exhibit N, dep of J. Gonterman, p. 50).  Of course, officer Jackson

denies that he failed to write down anything, and the statement is detailed and paints a rather ugly picture of the victim's husband.  (Exhibit M).

First, the statement allegedly missing is simply not exculpatory with respect to the two plaintiffs.  In a word, the victim's husband, Will had an airtight alibi via his sister and Verlin Miller whom he was with when the shoot occurred.  In addition, once probable cause was established, there was no duty by DPD to investigate further in order to try and prove that Will hired the persons who killed his wife.  More importantly, the alleged statement is rank hearsay which is totally inadmissible, and as such, simply not material.  *Wood, supra*.

Assuming arguendo that the statement was made by Ms. Gonterman and officer Jackson failed to write it down, there simply is no Brady violation do to want of materiality.  As such, defendants are entitled to dismissal of the claim.

## DEFENDANT OFFICERS HAVE QUALIFIED IMMUNITY AS TO SOME OF PLAINTIFFS' CLAIMS

Police officers are immune from civil liability under 42 U.S.C. §1983 unless, in the course of their discretionary functions, they violate a plaintiff's clearly established constitutional rights.  *Messerchmidt v. Millender*, 565 U.S. 535; 132 S. Ct. 1235, 1244; 182 L.Ed.2d 47 (2012); *Brown v. Battle Creek Police Department*, 844 F.3d 556, 565 (6th Cir. 2016); *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015).

Qualified immunity provides officers room to make reasonable but mistaken judgments, and protects all but the plainly incompetent and those who knowingly violate the law. *Stanton v. Sims*, 571 U.S. 3; 134 S. Ct. 3, 5; 187 L.Ed.2d 341 (2013); *Brown, supra*; *Mullins*, *supra*. A police officer is entitled to qualified immunity unless on an objective basis it is obvious that no reasonably competent officer would have concluded that his conduct was lawful. *Malley v. Briggs*, 475 U.S. 335, 341; 106 S.Ct. 1092; 89 L.Ed2d 271 (1986). Put another way, if officers of reasonable competence could disagree on the issue of whether particular conduct is unconstitutional, then immunity should be granted. *Malley, supra*.

In determining if an officer is entitled to qualified immunity, courts apply a two-step test: (1) whether the facts, when taken in a light most favorable to plaintiff, show the officer's conduct violated a constitutional right; and (2) whether the right violated was clearly established such that a reasonable officer would understand that his conduct violates that right. *Mullins, supra*. Since it is clearly established that people have a right to only be arrested/prosecuted when probable cause exists, and not have exculpatory/impeachment evidence withheld from them, it becomes the courts duty to determine whether, in light of the totality of circumstances, the officer's violated plaintiff's 4th Amendment rights and/or due process rights under the 14th Amendment. *Mullins, supra*.

18

As to the claim for malicious prosecution brought by Mr. Scott against officer Anthony Jackson, it is undisputed fact that he had absolutely nothing to do with the instigation, participation or decision to prosecute the case against Mr. Scott.  Officer Jackson's only involvement in the subject case was taking the statement of witness Jody Gonterman as addressed supra, and he was not even on the homicide team headed by defendant OIC, Cathy Adams.  In short, officer Jackson is entitled to qualified immunity as to Mr. Scott's claim for malicious prosecution,

With respect to Mr. Johnson and Mr. Scott's *Brady* claims arising out of the alleged failure of defendant officer Jackson to write down Ms. Gonterman's statement that her sister Lisa told her in a 1998 telephone conversation that if she was murdered, to look to her husband, Will, all of the defendants apart from officer Jackson are entitled to qualified immunity.  It is undisputed fact that the statement was taken by officer Jackson, and none of the other defendants were present.  There is absolutely no evidence indicating that officer Jackson told any of the other defendant officers that he omitted anything from the statement of Ms. Gonterman, or that Ms. Gonterman informed any of the defendant officers of her 1998 phone conversation with her sister Lisa Kindred.  As such, Cathy Adams and Barbara Simon are entitled to qualified immunity and dismissal of the Gonterman *Brady* claims in both the Johnson and Scott cases, and in addition, officer Wayne Pritchett in the Scott case.

## <u>CONCLUSION</u>

For the forgoing reasons, defendants respectfully request this Honorable Court enter an Order dismissing the malicious prosecution claims against them in the Johnson and Scott cases, dismissing the Gonterman *Brady* claims against them in the Johnson and Scott cases, dismissing Mr. Scott's claim for malicious prosecution against defendant officer Jackson based on qualified immunity, dismissing the Gonterman Brady claims against all defendants in the Johnson case and all defendants save officer Jackson in the Scott case based on qualified immunity, and awarding costs and interest so wrongfully incurred.

Respectfully submitted,


**/s/Michael M. Muller**
**MICHAEL M. MULLER (P-38070)**
**Attorney for defendants**
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
Dated:  March 15, 2021                    (313 237-5052

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**KENDRICK SCOTT,**

                **Plaintiff,**

    **-against-**

**DETROIT POLICE DEPARTMENT ("DPD") SERGEANT WAYNE PRITCHETT; DPD OFFICER CATHERINE ADAMS; DPD OF-FICER BARBARA SIMON; and DPD OFFICER ANTHONY JACKSON,**

            **Defendants.**

**No. 19-12718**

**Paul D. Borman**
<u>**United States District Judge**</u>

**Elizabeth A. Stafford**
<u>**Magistrate Judge**</u>

---

**JUSTLY JOHNSON, individually;**

              **Plaintiff,**

    **-against-**

**CATHERINE ADAMS, in her indi-vidual capacity; and BARBARA SI-MON, in her individual capacity;**

            **Defendants.**

**No. 19-12331**

**Paul D. Borman**
<u>**United States District Judge**</u>

**Elizabeth A. Stafford**
<u>**Magistrate Judge**</u>

## <u>PROOF OF SERVICE</u>

I hereby certify that on March 15, 2021, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing and the foregoing papers to the attorneys of record with the court.


**/s/Michael M. Muller**